IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LELAND S.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 1:20-cv-01732-HZ

OPINION & ORDER

Katherine Eitenmiller
Katie Taylor
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401

    Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Portland, OR 97204

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Leland S. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on June 5, 2018, alleging an onset date of February 14, 2018. Tr. 15, 177, 179.[2] His application was denied initially and on reconsideration. Tr. 108-11, 117-22. On January 7, 2020, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 29-59. On January 31, 2020, the ALJ found Plaintiff not disabled. Tr. 15-24. The Appeals Council denied review. Tr. 1-3.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on kidney failure and his bladder not working, which requires catheter use. Tr. 213. At the time of his alleged onset date, he was 53 years old. Tr. 60, 209. He has a ninth-grade education and past relevant work experience as an auto repair service estimator. Tr. 24, 214.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "brittle diabetes, peripheral neuropathy, coronary artery disease, and Stage-III chronic kidney disease." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can frequently balance, kneel, crouch, and stoop, and occasionally climb and crawl.

Tr. 18. In spite of these limitations, the ALJ concluded that Plaintiff could perform his past relevant work as an auto repair service estimator, because that "work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." Tr. 24. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 24.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

On review, Plaintiff argues that the ALJ committed three errors: (1) the ALJ improperly discounted Plaintiff's subjective symptom testimony; (2) the ALJ erroneously rejected the medical opinion of Dr. Christopher Morgan, MD; and (3) the ALJ improperly rejected lay witness testimony. Pl.'s Br. Support Compl. Rev. ("Pl.'s Br.") 5-19, ECF 12. For the reasons discussed below, the Court concludes that the ALJ did not commit harmful legal error, and the ALJ's decision is supported by substantial evidence. Accordingly, this case is affirmed.

**I.    Subjective Symptom Testimony**

    *A.    Legal Rule*

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is

malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

  B.  *Analysis*

In his written function report, Plaintiff alleged that his impaired kidney function, coronary heart disease, self-catheter with no bladder control, and his diabetes limited his ability

to work. Tr. 234. He reported that he can perform personal care and prepare his own meals, but he cannot stand for long periods of time. Tr. 236. He indicated that he performs laundry every two weeks without help. Tr. 237. He reported that he goes outside once or twice a day alone, can drive a car, and shops for food and personal items once a week for two to three hours. Tr. 237. He noted that he can pay bills, and his hobbies include watching movies. Tr. 238. He indicated that his conditions affect his memory and ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, complete tasks, use his hands, get along with others, and concentrate. Tr. 239. He reported that he can lift ten to fifteen pounds, can only walk about 100 yards, and needs ten to fifteen minutes of rest to resume walking. Tr. 239.

  At the ALJ hearing, Plaintiff testified about his work history. He testified that he quit his last job at Baxter Auto Parts because he could not perform the standing that was required. Tr. 35. Before he worked at Baxter Auto Parts, he testified that he worked as a service writer for 15 years. Tr. 35-37. He indicated that he stopped working as a service writer because the company went out of business in 2017, and if the company would not have gone out of business, Plaintiff would still be working there. Tr. 37-38. He testified, however, that while working as a service writer, he lost track of things and often had comprehension issues that required him to ask customers to repeat questions. Tr. 38, 49-50.

  Plaintiff also testified about his conditions. He estimated that he could only stand for about two hours per day. Tr. 46. He reported that he has trouble standing due to neuropathy in his feet and legs. Tr. 36. He also noted that he has neuropathy in his arms and hands that causes a tingling or buzzing sensation that impacts his ability to use a computer or write. Tr. 46. He indicated that he has used a catheter for about 20 years, and it requires him to spend extra time in the bathroom as a result. Tr. 47. He further testified that he has developed kidney disease and

coronary heart disease. Tr. 43. He testified that he used to smoke marijuana every day, and he eventually cut down to once or twice a week. Tr. 44. He then testified, however, that he "might have a hit a day," but he had not smoked marijuana for four to five months before the hearing. Tr. 44-45. He testified that his kidney disease makes him tired, causes lower back pain, and requires him to lie down or recline for at least part of the day. Tr. 49.

At the first step of the analysis, the ALJ found that Plaintiff's impairments could reasonably be expected to cause his reported symptoms. Tr. 19. At the second step, however, the ALJ determined that Plaintiff's symptom testimony was not entirely consistent with the medical evidence and other evidence in the record. Tr. 19.

Plaintiff now argues that the ALJ failed to identify specific, clear, and convincing reasons supported by substantial evidence to reject Plaintiff's subjective symptom testimony, so that testimony should be fully credited as true. Pl.'s Br. 12-13. Specifically, Plaintiff contends that the ALJ erred in rejecting his testimony on the basis that Plaintiff was non-compliant with treatment, that Plaintiff was able to work, and based on his reported daily activities. *Id.* at 13-17.

The ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony. In particular, the ALJ provided at least two reasons, supported by substantial evidence, for discounting Plaintiff's testimony: (1) Plaintiff's non-compliance with medical treatment; and (2) Plaintiff's reported daily activities.

First, the ALJ properly considered Plaintiff's non-compliance with medical treatment in discrediting his symptom testimony. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).

8 – OPINION & ORDER

Here, the ALJ determined that Plaintiff had a history of non-compliance with his diabetes management. Tr. 18, 19. The ALJ pointed to medical evidence from 2016 demonstrating that, historically, Plaintiff frequently did not take his diabetes medications, did not have test strips to measure his blood sugars, and went over a year without a diabetic eye exam. Tr. 19 (citing 378). Various treatment notes from Plaintiff's primary treatment provider in 2018 further reported Plaintiff's non-compliance, including reports that Plaintiff was a "very uncontrolled diabetic," Tr. 411, and that Plaintiff did not "take the time [or] effort to not eat sweets." Tr. 464.

Plaintiff cites *Gamble v. Chater*, 68 F.3d 319, 321-22 (9th Cir. 1995), in support of the proposition that the ALJ improperly characterized Plaintiff's non-compliance as willful, because the ALJ failed to consider Plaintiff's financial barriers to treatment. Pl.'s Br. 13-14. In *Gamble*, the Ninth Circuit explained that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." 68 F.3d at 321. According to Plaintiff, his non-compliance resulted from insurance and financial barriers to treatment, so the ALJ erroneously characterized Plaintiff's non-compliance as willful.

Although Plaintiff correctly notes that some of his non-compliance was attributable to financial or insurance difficulties, Tr. 378, other instances of Plaintiff's non-compliance were willful: Plaintiff did not manage his diet or exercise, Tr. 464, 492; he declined to follow-up with treatment providers within recommended time periods, Tr. 472 (noting that when Plaintiff's treatment provider asked Plaintiff to follow up in one month, Plaintiff declined and said he would follow up three months); he refused medications offered to him, Tr. 472; and he continued to smoke against medical advice. Tr. 492, 494. Thus, given that the ALJ relied on instances of Plaintiff's non-compliance that were willful, the ALJ appropriately relied on Plaintiff's willful non-compliance with medical treatment in weighing his subjective symptom testimony.

Second, the ALJ appropriately considered Plaintiff's daily activities in rejecting his subjective symptom testimony. When assessing credibility, the ALJ "may consider, among other factors, . . . the claimant's daily activities." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (internal quotation and citation omitted). As the ALJ noted, according to Plaintiff's written function report, "he has no problem with self-care, prepares meals daily, performs household chores, drives, shops weekly, and pays his own bills." Tr. 21 (citing Tr. 236-38). The ALJ specifically recounted that while Plaintiff's activities of daily living are "in no way dispositive of non-disability," the ALJ found Plaintiff's "self-report regarding his arguably normal activities of daily living to be further persuasive evidence that he possesses the ability to perform fulltime work activity consistent with the modified light exertion residual capacity found in this decision." Tr. 22. In determining Plaintiff's residual functional capacity, the ALJ noted that Plaintiff could only perform light work with several exertional limitations. Tr. 18. Thus, the ALJ appropriately considered Plaintiff's activities of daily living in rejecting his testimony concerning the severity of his symptoms.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom testimony. Although Plaintiff may disagree with the ALJ's interpretation of the record, the ALJ's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

**II.      Medical Opinion Evidence**

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Dr. Morgan provided an opinion statement of Plaintiff's condition in January 2019. Tr. 480-81. Dr. Morgan opined that during an eight-hour workday, Plaintiff could sit up to two hours, stand or walk for one hour, lift and carry up to twenty pounds occasionally and ten pounds frequently. Tr. 480. He reported that Plaintiff's symptoms were severe enough to occasionally interfere with his attention and concentration, and Plaintiff would need to take a five- to ten-minute break every thirty minutes. Tr. 481.

Dr. Morgan also provided an opinion statement in October 2019. Tr. 517-18. Dr. Morgan again indicated that, during an eight-hour workday, Plaintiff could sit up to two hours, stand or walk for one hour, lift and carry up to twenty pounds occasionally and ten pounds frequently. Tr. 517. He also opined that Plaintiff should avoid dust and that Plaintiff would need to take additional breaks every fifteen minutes. Tr. 518.

The ALJ found Dr. Morgan's opinion statements unpersuasive. Tr. 23. The ALJ noted that "neither statement from Dr. Morgan discusses what, if any, role the claimant's historical non-compliance with diabetes management plays in the proffered limitations." Tr. 23. The ALJ further concluded that, in any event, Dr. Morgan's proffered limitations were "out of proportion to the objective medical evidence, including his own treatment notes," which described that Plaintiff repeatedly presented as grossly normal, with the exception of decreased sensation in his feet. Tr. 23 (citing Tr. 457-58, 493-94, 499).

Plaintiff argues that the ALJ erred in evaluating the supportability and consistency of Dr. Morgan's opinions. Pl.'s Br. 6-11. In particular, Plaintiff contends that the ALJ erroneously concluded that Dr. Morgan's opinion statements were inconsistent and unsupported, because evidence provides objective support for Dr. Morgan's opinions. *Id.* at 9-11.

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Morgan's medical opinions. In evaluating the supportability of Dr. Morgan's opinions, the ALJ reflected that Dr. Morgan's opinions concerning the severity of Plaintiff's limitations were not supported by (1) evidence demonstrating Plaintiff's non-compliance with his diabetes management, Tr. 18-19 (citing 464, 472, 492, 494); or (2) evidence from other medical providers who provided opinions of Plaintiff's limitations based on his longitudinal record. Tr. 23 (citing Tr. 90-93, 99-106, 482-90). Those other medical providers opined that Plaintiff could sit, stand,

or walk, for about six hours in an eight-hour workday and that Plaintiff had no manipulative, communicative, or environmental limitations. Tr. 90-91, 103-04, 483-86.

The ALJ further determined that Dr. Morgan's opinion was not consistent with his own treatment notes, which noted that Plaintiff consistently presented normal in examinations. Tr. 23, 457-58, 493-94, 499. Incongruity between a doctor's opinion and his own treatment notes provides a valid basis for an ALJ to discount a medical opinion. *Tommasetti*, 533 F.3d at 1041. Thus, the ALJ appropriately considered the supportability and consistency of Dr. Morgan's opinions, and the rejection of Dr. Morgan's opinions was supported by substantial evidence.

### III.     Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses*. Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for

rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Plaintiff's housemate and friend, Kim W., provided a lay witness statement on Plaintiff's behalf. Tr. 272-79. She stated that she has known Plaintiff for ten years and that Plaintiff suffers from impaired cognitive ability, physical weakness, shortness of breath, limited ability to stand, and neuropathy. Tr. 272. She noted that he performs household chores with frequent breaks, has difficulty sleeping, and uses a catheter. Tr. 273-74. She reported that Plaintiff's conditions impair his memory and ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, complete tasks, concentrate, understand, follow instructions, and use his hands. Tr. 275.

Plaintiff argues that the ALJ failed to identify germane reasons to reject Kim W.'s lay witness testimony. Pl.'s Br. 17-19. The Court disagrees.

The ALJ provided germane reasons for rejecting Kim W.'s lay witness testimony. The ALJ found that Kim. W's testimony was "consistent with [Plaintiff's] written statement, from July 2018, which is discussed above." Tr. 23. When an ALJ gives legally sufficient reasons for discounting a plaintiff's subjective complaints, the ALJ may reject similar lay testimony for the same reasons. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Here, Kim W.'s lay witness testimony was sufficiently similar to Plaintiff's own subjective symptom testimony. *Compare* Tr. 234-41, *with* Tr. 272-79. Thus, because the Court has already concluded that the ALJ provided legally sufficient reasons for rejecting Plaintiff's testimony, the ALJ also provided germane reasons for rejecting Kim W.'s lay witness testimony.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:＿＿＿April 28, 2022＿＿＿.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
MARCO A. HERNÁNDEZ
United States District Judge

15 – OPINION & ORDER